Thank you, Your Honors. My name is Rebecca Edelson. I'm with Step Torn Johnson. Here with me is my partner, Song Kim. I'm going to speak on behalf of both of us. We represent the appellant, His and Her Corporation. I'd like to reserve roughly half of my time for rebuttal. Even though most people understand cuticle as the base of a fingernail, here the district court ruled as a matter of law that cuticle is generic for a hair extension. This was clear error and the lower court's summary judgment must be reversed here. Genericide is supposed to be a heavy burden. The lower court failed to appreciate that just because there have been attempts in the industry to genericize a mark doesn't mean that they've been successful with consumers. That is especially true given His and Her's decade promotion of the His and Her cuticle brand hair extension. Is a genericness test directed only at the ultimate consumer? Yes, Your Honor. In other words, what other people along the chain of supply will say, believe is not relevant? It's the consumer. If you look at 15 U.S.C. 1063, 1064.3, the test is the consumer. It's the primary significance to the consumer, the relevant consumer body of the mark. But I thought in Surgeon Centers of America versus Medical Dental Surgeries, we said that a trademark could be generic without requiring direct evidence from the consuming public. No, that's not correct, Your Honor. First of all, if I remember that case correctly, That's the one where Judge Goodwin dissented. That's why I read it pretty carefully. Okay. The consumer body was made up of doctors and patients there, and they did have consumer statements in the record. The court came out. There was no direct evidence from the consumer public in that particular matter. And the court said, nonetheless, the trademark is generic. And when they found that it was nonetheless generic, Judge Goodwin said, well, hey, you can't do that. There's nothing there to say what the consumers think. Right. And there were letters from consumers in the record. And if you look at the Park and Fly decision, the Ninth Circuit decision, that's the way the Ninth Circuit distinguished Surgeon Centers there and pointed out that there was evidence of consumer use or perception in Surgeon Center. And I think it's also important to point out that in Surgeon Center, essentially the parties stipulated that the issue could be resolved on summary judgment. They agreed to stipulated facts and that there were no credibility issues. And the opinion even reflects that essentially what the court was doing was deciding the issue on a bench trial, even though they were calling it a summary judgment. But it wasn't really a summary judgment as you and I understand it. Well, it seems to me that that's the big case stands in the way of your argument as to what happened in the lower court. That's why I wanted you to address it. Thank you, Your Honor. And I think it is important to realize that there was consumer evidence in the Surgeon Center case. And, in fact ---- Well, it seems, following up on what Judge Smith referred to, in Surgeon Centers, right, according to the opinion, it says the district court reached its conclusion and made its finding based primarily upon a dictionary definition. Right? The court says, well, you know, surgical and center are just two generic words from the dictionary, and you just put them together. And that's you still ---- what you come up with is still generic. Isn't that basically what the district court did? I know there was no testimony about it. The district court or the Ninth Circuit in Surgeon Center? Because the Surgeon Center ---- The district court did that. Well, at least the Ninth Circuit said this is what the district court did. Correct. But there was also a discussion of the other evidence in the record, and it included industry use of Surgeon Center, the government's use in regulations or I can't ---- I think it was regulations in that case of the term Surgeon Center. There were letters or statements from consumers. And, again, when the Ninth Circuit decided the Park and Fly decision, again, that was one that started out with a discussion of Park and Fly and sort of dissecting the mark Park and Fly. But then it went on to a discussion of what other evidence there was in the record. And the Ninth Circuit observed that, basically, the challenger of the mark has come forward with industry uses of the mark, and there were a few references at trade shows, but observed that the record was completely devoid of any direct evidence of consumer use or perception of the mark. All right. Let's get to this case. In this case, there are no consumer surveys, right? Correct. You put in some consumer ---- Declarations. Right? Correct. Consumers of your product, right? Consumers of hair extensions. Well, hair extensions made by your client, right? In other words, weren't they his and her customers? The ones you put in? It's ---- If I remember the affidavits, it didn't say that they were limited to purchasing his and her hair extensions. They said that they were consumers of hair extensions, and they recognized the brand Cuticle as his and hers brand. Well, what I'm getting at is there are nothing in those affidavits that, you know, display any awareness of, I'll call it the market for hair extensions, outside of his and her products, right? They say that they ---- They know his and her products. That's where they buy their hair extensions, and that's what they identify with the term. They say nothing about, you know, any other part of the market. I don't think that's correct. I think they start off by saying that they're consumer of hair extensions. All right. So ---- And they ---- All right. In any event, obviously you believe they support your case. Now, there were no consumer affidavits from the defendant. Is that right? That is correct. And that's the basis of your ---- One of the main points of your appeal is that, well, the only consumer view, evidence was presented by you, right, and nothing from the defendant. So it was improper. And so on that basis, on summary judgment, the court couldn't conclude that it's generic because there was no testimony that would support it. Is that your ---- That's essentially correct, that they have ---- What about the dictionary? What about the dictionary? There was no ---- Doesn't it support genericness? No. In this case, there was no dictionary definition defining cuticle as a hair extension, which is the product at issue, not even a hair product. The only dictionary definition is an obscure definition of a cuticle as the outer layer of a hair strand. And His and Her does not sell outer layers of hair strands. They sell extensions, which is ---- Which is a bunch of hair strands with those cuticles, right? It has hair in it, but a hair extension, and we presented evidence that a hair extension is far more than just hair. It's a product where you have to have technology to put the hair together in a way to keep it together to attach it to the ---- Well, let me put it this way. I think this is sort of the case on the other side. All the hair that makes up the hair extension that you sell is cuticle hair. So it's a small step to get from the dictionary definition to your product. Isn't that sort of ---- Well, that's their argument, and I'm sure that's what they'll argue to the jury. But here we're on summary judgment, and we're arguing something else. And our position is supported by the law here. The law is very clear that you can't just say the mark is generic for any old product. It has to be the product with which it's used. That's number one. And you can't just use any old mark in connection with the product. It has to be the mark that is the subject of the incontestable registration. And so here they had two problems. They had a number of problems. No consumer evidence. They presented evidence of the wrong mark and the wrong product. And so it would be one thing if the registration had said cuticle for cuticle hair, but it doesn't. It says for hair extensions. And so that was their burden. They needed to show that there was no way that any reasonable jury could come back with anything but a finding that cuticle was generic for hair extensions. They didn't do that. Essentially what they did was they presented evidence that they would present at trial. But it wasn't sufficient to give them a directed verdict on the issue. Well, okay. Let me switch to all of the other evidence that Judge Fees mentioned in his, I think, rather long order about the way both sides used cuticle generically as identifying a certain type of hair extension. Right? There's a lot of evidence like that from both sides, including your website. I don't know about a lot of evidence. There was a post by a third party on the website, and as soon as it was brought to the manager of our client's attention, it was immediately struck down. Similarly, it wasn't cuticle. It was cuticle hair, if anything. Similarly, in the PTO registration, again, it was controverted that our client was intending to use it generically. What he was trying to explain, and again, English is not his first language, is that we don't sell the outer layer of a hair strand. What we're trying to do is register cuticle hair. Again, it wasn't the mark cuticle. It was cuticle hair as a trademark, not as a generic term. I mean, are you? Sorry, I didn't mean to interrupt. No, I was just going to point out, like, not only was there evidence disputing the client's supposed generic use of cuticle hair, which isn't even the term, but the PTO itself saw a difference between cuticle and cuticle hair and said you can have cuticle, but you can't have cuticle hair. And so what do they do? They come back with this evidence relating to cuticle hair phrases, which is not even the mark, and it's not the same mark as cuticle. Now, as I understand it, as you present this to the judge, that the defendant first bears the burden of showing the absence of a genuine issue as it relates to genericness. If they get that far, then you have the burden to designate facts showing that there's a genuine issue for trial, as I understand it. Now, are you disputing that they did not meet their burden to show the absence, or are you suggesting that the district court did not give your facts as presented and for which they had to give you the benefit of the doubt because it's a summary judgment adequate weight? Absolutely both, Your Honor. First, they did not meet their initial burden. And like I said, their evidence did not contain cuticle. Well, but they, I mean, we don't have a lot of time here, but the worry that I have is they showed that the term was used in 51 sources of books, magazines, newspapers, and on the Internet of media outlets. They showed that this term cuticle was used throughout the hair product industry on third-party products and advertising. Then they came up with a posted article on your website, and you say you took it right down, which seemed to indicate that it was pretty generic. You said you took it right down. Their evidence said you didn't get it down for a year. Then in the cancellation proceeding before the trademark trial and appeal board, you even admitted, your client admitted, that not only that everyone in the hair products industry has an inherent right to sue over the phrase, but that the phrase forfeited cuticles or fortified cuticles is composed entirely of unregistered components. So when I saw all of that, I said, well, it seems to me they've met their side, and now I have to look at your side. And it seems to me that's what Judge Fess did. And all he said on your side was these consumer declarations are nearly identical. They're in blank forms. Each one states the person recognized cuticle as a brand of high-quality hair extensions. But I'm not giving these any circumstance. They're all like they were the same, wholesaler declarations, all the same. He went through each part of the evidence you presented and said, that isn't it. And so I'm, again, trying to say, how are you going to respond to that? And I appreciate it. It took some of your time, so I'll give you a little extra. I appreciate that, Your Honor. First of all, they did not meet the burden. Under black-letter Ninth Circuit law, they had to come forward with consumer evidence, perception and use of the mark. Without it, the Ninth Circuit has said we're without sufficient basis to make a finding of genericness. That's the Park and Fly case. That's KP Permanent. That's the Zabando case, which was addressing mere descriptiveness as opposed to generic. But it said that industry use is just a factor and cannot carry summary judgment by itself. They did not present evidence of cuticle used with hair extensions. What they did was a slew of cuticle hair phrases, cuticle virgin Remy, nanotech, whatever. They had all sorts of other marks in their evidence. That is not sufficient to carry summary judgment. Remember, the standard here for them to carry their initial burden was they needed to show a directed verdict here. And here, you know, I'm running out of time, but I do want to get to you. You've long since run out. Okay, I appreciate that. I'm just letting you talk about this, because to me, I'm going to talk to him about this is summary judgment. Correct. So I'm going to talk to him about that. But I'm talking to you about Judge Fess used all the appropriate techniques to destroy your evidence, and he said this is enough to make the prima facie case on this other evidence. He is his role was not to destroy our evidence. It was whether there was sufficient evidence that it could go to the jury. And if the jury wants to destroy. On one part of that, I think we're talking about self-realization fellowship church. Under that case, wasn't it appropriate for the district court to discount the declarations from your own customers and wholesalers as not probative of consumer perception? Absolutely not. Tell me why not. Certainly. The issue in that case was the Ninth Circuit in self-realization was concerned that there were no consumer declarations. We provided those. It said, okay, to the trademark holder, you've provided wholesaler declarations and your employee declarations, but where are the consumer declarations? We're going to discount the wholesaler declarations in your employees because they're your wholesalers and they're your employers. Here, there was no evidence in the record that the industry member declarants were his and hers wholesalers or had any sort of business relationship with them. The court just made that up out of wholesale cloth. There was nothing in the record. So for him to discount it on that basis was completely inappropriate. Similarly, there was no evidence in the record that the customers were our long-term customers. What they said was they were long-term customers of hair extensions, if anything, and that they currently, they've known about the brand, Cuticle, and they currently seek out his and her Cuticle brand extensions. It wasn't necessarily to the exclusion of all other extensions or anything indicating that they were our long-term customers. All right. Thank you. Thank you. Your time has expired and I've given you over.  Thank you. Good afternoon, Your Honors. Please support Michael Nicodema for the defendants in this case. Your Honor, there is no case in the Ninth Circuit which says that direct consumer survey evidence is required for the movement to carry its burden on summary judgment. Well, I don't think it's a matter of whether direct consumer evidence is required, but there has to be some evidence of consumer perception, doesn't there, like a survey or something? Well, no, Your Honor. There does not have to be survey evidence. Do I have to have any evidence of the consumer perception? Well, you do, but it can be indirect evidence. And the type of evidence we cited in our brief, the type of evidence we have in this case in which the case law supports usage of the term in the popular press, usage by competitors in the industry, the trademark holders' own use, usage in trade journals, newspapers and magazines, all of that evidence is considered indirect evidence of consumer perception. And this Court has said... Well, I guess my worry is, as long as you're addressing this, KP Permanent Makeup Court went right at the district court and said summary judgment was not proper there because the moving party, and I quote, produced no evidence that the consumers understood the trademark to be generic. And then Filipino Yellow Pages says, while evidence of competitors and the media's use of a term is not irrelevant, it is the consumer's understanding that's the most important. So, again, I'm looking at your stuff and I'm trying to say, did we really get the consumer's understanding in the evidence presented? That's the question. Well, I think we did, Your Honor, because if you look at the evidence we presented, it's from people in the industry and it's broadcast to the consumers. That's why it's called indirect evidence. For example, websites of 155 vendors of hair extensions, 51 citations to books and articles, magazine advertisements, six major sellers of hair products, the appellant's own website that Your Honor mentioned. The appellants filed a trademark application on cuticle hair in 2003 where they submitted a sample of their use of the term cuticle, which is defined the same way the district court defined it in finding genericness. And as Your Honor mentioned, appellant's cancellation proceeding for SNG's fortified cuticle marks where they said that fortified cuticles is made up of unregisterable components, meaning cuticle can't be registered and fortified can't be registered. Yeah, but, you know, that doesn't get to I don't think Judge Smith's question about KP. In other words, that opinion is based specifically on the panel's statement that KP presented no evidence that microcolors was used or understood by the consumers as a generic term. Well, the same could be said about all the evidence you're referring to. That says nothing about consumer understanding. Well, Your Honor. What advertisers believe, what the PTO believes and so forth, but nothing about what consumers believe. Well, Your Honor, I respectfully disagree because in that case there was no evidence, period. Here we have, as Judge Fease indicated, overwhelming evidence of how the term is understood. And to Your Honor's point about the Filipino case, the Court did say that use in the industry is relevant. Now, you take that and you multiply it. Well, what they said was that it can't be irrelevant, but consumer is the big point. That's what they said. So now it can be relevant, and now when you multiply it by all of the evidence we submitted, we didn't submit one source, two sources, three sources, four sources. We submitted hundreds of sources showing how this term is understood. And I'd like to briefly address the consumer declarations and Your Honor's point about the self-realization case, if I may. That case is right on point. And counsel would know if these declarations came from their own folks because they procured them. They would know exactly where they came from. Now, in self-realization, this Court upheld summary judgment of genericness and found that all of the appellant's declarations from their own customers and wholesalers were entitled to limited probative value. They could not generate a genuine issue of material fact. And, Your Honor, in the lower court, this is what the appellants said in their opposition brief, and that's evidence of record 1984 at note 5. Plaintiffs' employee and wholesaler declarations standing alone may not necessarily reflect the views of the purchasing public, and they cite the self-realization case when they said that. So, to me, that's a concession that their own declarations that they submitted do not satisfy the standard of self-realization and cannot create a genuine issue of material fact. And I think that's where Judge Fees was going. He said those declarations, while they may say that the customers of this particular hair extension recognize it and think it's high quality, it doesn't go to the issue of the primary significance of the term. Well, how much weight do we give the fact that cuticle is a registered trademark with incontestable status? Okay. You don't because we're not talking about descriptiveness here. We're talking about genericness. And under Ninth Circuit law, the incontestable status of the trademark registration is irrelevant. It's not given any weight. So there's no presumption at all if you're talking about genericness, if that's the issue? No, sir. There is a presumption of validity, but it's rebuttable. It's not an incontestable presumption. And all we have to come forward with is a preponderance of the evidence on the issue of genericness. The ink ---- But, you see, preponderance is a trial term. It's not a summary judgment term, is it? Well, Your Honor, the same evidentiary ---- On a summary judgment motion, the Court applies the same evidentiary standards that it would at trial. So, well ---- In other words, the judge can make a ---- Well, in fact, Judge Fees just about said that, right? I mean, you know, he says, you know, I give less weight to some of these declarations for the reasons I think Judge Smith ---- No, what I ---- Like, you know, they were all form declarations and so forth. And he made some of those, what, evidentiary findings, right? Well, what he did, Your Honor, is actually, I think, as Judge Smith rightly observed, he followed the summary judgment standard. For example, like with the Lano Declaration or the Chung Declaration, he said, they do not create a genuine issue of material fact. They're not significantly probative, countervailing evidence. That's the standard, and that's what he followed. Frankly, it seemed ---- I see the case that I had her comment about, and now you've taken it up, and I saw it as to the consumer declarations. If I move to the evidence of the competitors and the media's use, I mean, it seemed to me that what they suggested, 156 websites, 69 articles, 29 magazines, and 478 pages of printed ads that all said things like Ramey, Ramey and Virgin, rather than having to do with Cuticle. And what the judge did is he just looked at that and said to himself, well, that's not enough in my book. And that was the most weighing I saw of his determination. And I don't know how you do that on summary court. Well, Your Honor, I believe what happened there is we argued this in our papers in both the district court and here. I saw what you argued. I'm just trying to figure out how on summary judgment he wasn't obliged to construe that evidence in H&H's favor, and that would have precluded the summary judgment. Well, even construing that evidence in H&H's favor, it did not show that the use of the term Cuticle was not generic, and it did not show that the primary significance of the term was the plaintiff. It didn't show that. All it showed is that, at best, that there are other generic synonyms for Cuticle like Ramey, and we've cited cases that establish that just because there are other generic synonyms for a term, if the term is generic, that fact is irrelevant. There does not have to be under the law only one generic name for a product. Well, what do we do? What about the fact that you continue to pursue your application to register the trademark? I think it's Cuticle Ramey. Yes. Does that create a reasonable inference that Cuticle is distinctive and entitled to trademark protection? No, Your Honor. It does not go to the issue of the primary significance of the term Cuticle at all. So what we have here is Cuticle and Ramey, two generic synonyms that we filed a trademark application on. Okay? We cited law to the effect that you could have two words in and of themselves that are generic, but when you put them together, they may be registrable. We don't know what's going to happen. Surger Center. What? Just like Surger Center. In Surger Center, they were not. But here, the fact that we're pursuing this application is irrelevant to the issue at hand, which is what is the primary significance of the term Cuticle, which we submitted all this evidence on. Now, if you look at what they've said in the trademark office, they've said a couple of things. They said Cuticle is not registrable. That's an admission of theirs. When they were filing their trademark applications on Cuticle and Cuticle Hair, they used the date of first use for Cuticle Hair for both of them, showing that they're intermixing those terms. I'm sorry. Say that again. Yes, ma'am. When the plaintiffs filed trademark applications, maybe I should do it in sequence to make myself a little clearer. Plaintiffs filed a trademark application on Cuticle Hair. And in that application, they said the first use of the term was in the 1990s. And they didn't start using Cuticle by itself until 2004. Then they filed a trademark application later on Cuticle. And they said the first use of that term alone was in the 1990s, which is when they were using Cuticle Hair. So they merged the two. There's no distinction between the two. And it's not surprising, Your Honor, that in magazines, publications, trade journals, things of that nature talking about Cuticle Hair extensions, Cuticle Wigs, Cuticle Hair, you might see the words Cuticle and Hair next to each other, juxtaposed together. I mean, that's just the English language. That doesn't detract from the fact that our evidence shows the genericness of the term Cuticle. What do we do with Lioneau's declaration? Don't you think the judge at least made a non-summary judgment decision on that declaration? No, sir. Well, how in the devil can the judge? I mean, there was an article written by this Lioneau. And then he makes a declaration directly to the court saying, hey, I wasn't right about that. I was doing something different than what it is here. And I now suggest it's different. And the judge just said, I mean, what the judge said was, well, this plainly contradicts the statements in the early article. It was written at a time and under circumstances in which he had no motive to take a position. So, therefore, I'm believing that more than I'm believing the declaration. That's what he said. Well, Your Honor, this is where I think the judge was going. And this is where I think how this Court should resolve the Lioneau. Is it Lioneau? The Lioneau declaration. Well, I called it Lioneau, but I don't know. I don't know what it is. Okay. Let's call it Lioneau. So the thing that was in the public domain is Mr. Lioneau's article, where he defines cuticle hair in a way that's consistent with genericness. Now, what he does in his declaration, in the litigation, is basically try to recant what he said and said, I'm not an expert in hair. I'm not an expert in the hair industry. I don't know if there's any generally accepted meaning. So those are his private thoughts, Your Honor. Those are his, what he thinks now, his state of mind, which is not in the public domain. It has nothing to do with we're not saying he's lying. We're not saying he had a motive. What he said was he'd written the article to resolve any confusion and that there was no widely accepted or understood meaning now. See, but he didn't say that in the article. He didn't say that in what was in the public domain. Again, again, we're here on summary judgment. I've been on that, in that seat. Here you got a guy who comes in with an expert declaration saying, what I said and what the opposition is now relying on is absolutely wrong. How do you resolve that on summary judgment? Well, the judge concluded. What case gives the good judge the opportunity to deal with an expert testimony like that? Every Supreme Court case which says that you have to come forward with significantly probative countervailing evidence to create a genuine issue of material fact, which the judge said Mr. Lionel's declaration did not. Even if you put that Lionel article on the shelf, we have 155 vendor websites. We have 51 books and articles. Well, all you're doing now is weighing evidence. No, Your Honor, we're not weighing evidence. It's is there significantly probative countervailing evidence? Now, the Supreme Court in the Matushita case said if there is some evidence against summary judgment or if there's some metaphysical doubt against summary judgment, that's not enough. You have to have significantly probative countervailing evidence. A witness coming in and saying that his article was a mistake does not create a genuine issue of material fact, especially when he says I'm not an expert or knowledgeable in hair of the hair industry in his declaration. That doesn't defeat summary judgment whatsoever, Your Honor. Thank you for your argument. Thank you, counsel. I think I've given you both extra time, so I'm just going to submit the case. I know your arguments. I know where we're going. I've tried to be very fair, give you both a chance to talk about that. We will submit his and her Hair Corp. v. Shake and Go Fashion 12-56777.
judges: Tashima, Smith, Murguia